UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00559-RJC-DCK

| | |
|---|---|
| ROUNDPOINT MORTGAGE SERVICING CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **ORDER** ) |
| FIVE BROTHERS MORTGAGE COMPANY SERVICES AND SECURING, INC., | ) ) ) ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 53) (the "Motion"); Defendant's Opposition to Plaintiff's Motion, (Doc. No. 56); Plaintiff's Reply in Support of its Motion, (Doc. No. 57); and all the associated exhibits. The Motion has been briefed fully and is ripe for adjudication.

I.     BACKGROUND

RoundPoint Mortgage Servicing Corporation ("Plaintiff" or "RoundPoint") and Five Brothers Mortgage Co. Services & Securing, Inc. ("Defendant" or "Five Brothers") dispute which party should pay for which legal fees pursuant to a contract between the two of them and the indemnification clause therein. RoundPoint provides mortgage loan services and had a contract, called the Tri-Party Field Services Agreement (the "Contract"), (Doc. No. 1-1), with Five Brothers to perform inspections and property preservation on properties for which it provided loan services. Litigation arose regarding one of those properties in 2013 when the property owner filed a lawsuit against several parties including RoundPoint and Five Brothers. Both RoundPoint and Five Brothers (collectively, the "Parties") bore their own legal fees and

settlement costs. Now RoundPoint seeks indemnification from Five Brothers for RoundPoint's costs incurred defending that lawsuit.

  a. <u>The Contract</u>

On December 2, 2011, RoundPoint entered into the Contract, which provided, among other things, that Five Brothers would perform inspection and property preservation services on properties securing mortgage loans that RoundPoint services. The Contract includes an indemnification provision that states the following:

> Five Brothers shall indemnify and hold harmless 24 Asset and RoundPoint from any and all liabilities, expenses, demands, suits, judgments, losses, claims, injuries, damages, penalties, fines, forfeitures, attorney's fees and costs, of any kind whatsoever (each a "Loss" and collectively "Losses"), arising from or in any way connected with Five Brothers:
>
>  i) Violation of any law or regulation;
>  ii) Non-compliance with the terms of this Agreement or the breach of any warranty or representation set forth in this Agreement, including all exhibits and any other agreements incorporated in this Agreement by reference;
>  iii) Any claims or actions whatsoever brought by any subcontractor hired by Five Brothers;
>  iv) Negligent, wrongful acts or misconduct by Five Brothers, its employees, officers, directors, agents, contractors or subcontracts;
>  v) Any claims or actions brought by a third party alleging death or injury to any person or damage to or destruction of (whether fully or partially) property arising out of an act, error, or omission by Five Brothers; or
>  vi) Any mistakes by Five Brothers relating to the performance of the Services herein.

(Doc. No. 1-1 at 4–5). Furthermore, the Contract includes the following language:

> It is expressly understood that this indemnity shall extend to any and all alleged acts, errors, or omissions (whether willful, intentional, negligent, or grossly negligent) committed by Five Brothers, its agents, employees, subcontractors, or independent contractors, while performing any services for RoundPoint. Five Brothers shall assume full responsibility for payment of the cost, defense and settlement of such claim action or proceeding.

(<u>Id.</u> at 5).

b.  Facts Leading to the Underlying Lawsuit

In January 2010, RoundPoint informed one of its clients, Annette Hayes ("Hayes")—who owned a condominium in Wilson, NC— that her loan was in default.  (Doc. No. 54-1 at 82–83). According to Ms. Hayes' complaint, she negotiated a repayment plan with RoundPoint and honored the repayment plan, but nonetheless RoundPoint instituted a foreclosure action, obtained a foreclosure on July 15, 2010, and proceeded with plans to sell Ms. Hayes' condo.  (Id. at 49–50).  Ms. Hayes alleged that she continued to make mortgage payments as scheduled but endured "incomprehensible errors by Defendant RoundPoint in properly crediting her mortgage payments and in continuing to pursue foreclosure proceedings that [Ms. Hayes] had been assured were abated as a result of her compliance with the repayment plan . . . ."  (Id. at 50).  Ms. Hayes' condo was eventually sold at public auction to the sole bidder Self-Help Services Corporation d/b/a/ Self-Help Credit Union ("SHCU"), who also provided the loan to Ms. Hayes for her purchase of the condo.  (Id. at 51).  Ms. Hayes' further alleged that after filing bankruptcy and causing a stay of the foreclosure related-activity, Ms. Hayes became current with her mortgage, which was not recognized due to errors by RoundPoint.  (Id. at 51–54).

Part and parcel to foreclosing on Ms. Hayes' condo, RoundPoint, on behalf of SHCU and through Five Brothers and its agent Douglas Allan Stuart ("Stuart"), attempted to secure the condo, which Ms. Hayes' alleged amounted to trespassing.  (Id. at 54).  First, on March 1, 2013, Mr. Stuart, acting as Five Brothers' agent, entered Ms. Hayes' property to install a padlock and thereby locked Ms. Hayes out of her condo—an "unlawful self-help eviction" according to Ms. Hayes.  (Id.).  Although Ms. Hayes regained access to her condo in the following days, Mr. Stuart, acting on behalf of Five Brothers, again entered Ms. Hayes condo on March 17, 2013 and secured it with a padlock in "a second unlawful self-help eviction."  (Id. at 56).  Ms. Hayes

alleged that these "unlawful tactics are part of a pattern of misconduct by Defendant Five Brothers and its employees nationwide, as reflected in numerous civil suits filed against the company" (citing civil suits in Maryland, New York, Florida, and Michigan). (Id. at 57). Ms. Hayes further alleged that as part of the second trespass her sinks, toilets, and other utilities were taped off "with tape from Defendant Five Brothers," some of her personal effects had been moved, and her hot water heater was damaged, consequently leaking in Ms. Hayes' condo. (Id. at 60).

    c. <u>The Underlying Lawsuit</u>

After foreclosure proceedings and the attempted sale of Ms. Hayes' condo to SHCU in April 2013, Ms. Hayes filed a lawsuit against SHCU, RoundPoint, Five Brothers and Stuart[1](the "Hayes Litigation") on August 21, 2013. (Doc. No. 54-1 at 43–78; <u>Hayes v. Self-Help Servs. Corp., et al.</u>, 13-CVS-004223 (N.C. Sup. Ct. Aug. 21, 2013)).[2] The defendants in the Hayes Litigation were each sued due to their role in Ms. Hayes' mortgage and the attempted foreclosures on her condo—SHCU provided the loan for the condo, RoundPoint serviced the loan on behalf of SHCU, Five Brothers performed property preservation services on the home when Ms. Hayes defaulted, and Mr. Stuart was retained by Five Brothers to complete the property preservation work on its behalf. (Id. at 81, 158–67; Doc. No. 54-3 at 9, 18–35, 58).

Ms. Hayes' complaint contained nineteen causes of action: (1) Wrongful Foreclosure; (2) Attempted Wrongful Foreclosure; (3) Abuse of Process; (4) Breach of Contract and Implied Covenant of Good Faith and Fair Dealing; (5) Unjust Enrichment; (6) Trespass (on or about

---

[1]     Mr. Stuart is now deceased.

[2]     The case was removed to the U.S. District Court for the Middle District of North Carolina on October 2, 2013. <u>Hayes v. Self-Help Servs. Corp., et al.</u>, 1:13-cv-00880-CCE-JLW (M.D.N.C. Oct. 2, 2013).

March 1, 2013); (7) Trespass (on or about March 17, 2013); (8) Fraud; (9) Tortious Interference with Contract; (10) Defamation Per Se; (11) Intentional Infliction of Emotional Distress; (12) Negligent Infliction of Emotional Distress; (13) Negligent Hiring and Supervision; (14) Violation of the North Carolina Unfair and Deceptive Trade Practices Act; (15) Violation of the North Carolina Collection Agency Act; (16) Violation of the North Carolina Debt Collection Act; (17) Violation of the Federal Fair Debt Collection Practices Act; (18) Violation of the Federal Civil Rights Act of 1871; and (19) Civil Conspiracy. <u>See</u> <u>generally</u> (Doc. No. 54-1 at 43–78). All nineteen were asserted against RoundPoint, seventeen against SHCU (Causes of Action 1–16, 19), fourteen against Five Brothers (Causes of Action 6–19), and thirteen against Mr. Stuart (Causes of Action 6 – 12, 14 – 19). (<u>Id.</u>). After motions for judgment on the pleadings, causes of action 4, 6, 7, 10 (partially), 12, 13 (partially), 14–17 (partially), and 19 remained. (Doc. No. 54-2 at 33–35). RoundPoint argues that those remaining claims focused primarily on the two alleged trespasses by Mr. Stuart on behalf of Five Brothers, but Five Brothers contends that the Hayes Litigation instead centered on RoundPoint and its actions and alleged negligence in seeking foreclosure and eviction on a home not in default. (Doc. Nos. 54 at 6; 56 at 8). Specifically, RoundPoint contends that Ms. Hayes' lawsuit focused on March 1, 2013 and March 17, 2013 visits Mr. Stuart made to Ms. Hayes' property in order to perform property preservation services. (Doc. No. 54 at 6–7).

At the summary judgment stage approximately a year after the motions for judgment on the pleadings, the trial court dismissed all remaining claims except a claim of trespass against all defendants for the March 17, 2013 property preservation visit Mr. Stuart made to the condo. (Doc. Nos. 54 at 7; 56 at 10). This claim settled for $5,000 each from RoundPoint and SHCU collectively, Five Brothers, and Stuart. (<u>Id.</u>). Later, RoundPoint and SHCU continued

settlement discussions which resulted in an additional payment of $500. (Id.). The legal fees to resolve the litigation with Ms. Hayes were as follows (excluding settlement expenses): Five Brothers - $54,630.30; Mr. Stuart - $72,168.89; Round Point/SHCU - $381,403.16. (Doc. No. 56 at 10).

After RoundPoint sent two demand letters, Five Brothers refused to indemnify RoundPoint so the Parties attempted to mediate their dispute but could not resolve the case. Consequently, RoundPoint filed this lawsuit containing a single claim for breach of contract on November 18, 2015 seeking damages for the $5,500 settlement amount and the $381,403.16 it incurred in legal expenses and costs in defense of the Hayes Litigation. (Doc. No. 1; Doc. No. 54 at 14). On January 20, 2016, Five Brothers filed an answer, counterclaim, and indemnification demand seeking reimbursement for Five Brothers' expenses in the Hayes Litigation. (Doc. No. 8). On December 16, 2016, Plaintiff RoundPoint moved for summary judgment in its favor. (Doc. No. 53). Five Brothers timely filed an opposition brief and RoundPoint timely filed a reply brief. (Doc. Nos. 56 and 57). On March 6, 2017, this Court heard oral arguments on RoundPoint's Motion, partially granted the Motion—specifically, granting RoundPoint's Motion regarding Five Brothers' counterclaim and indemnification demand—and took the rest of the Motion under advisement.

II.    **STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant

has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50.

**III.    DISCUSSION**

The heart of this dispute is not whether Five Brothers breached the Contract—even Five Brothers seems to admit that it owes some indemnification to RoundPoint—rather, the Parties

disagree regarding which claims in the Hayes Litigation require indemnification by Five Brothers and how much that indemnification should be. Nonetheless, as an initial matter, the Court considers whether Five Brothers breached the Contract by not indemnifying RoundPoint, and then examines the extent of the breach, or in other words, for how much of RoundPoint's costs from the Hayes Litigation Five Brothers is responsible.

    a. <u>Whether Five Brothers Breached the Contract</u>

Pursuant to the Contract, the alleged breach here is governed by New York law. Under New York law, the elements for a breach of contract claim are "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." <u>Greenfield v. Philles Records</u>, 780 N.E.2d 562, 569 (N.Y. 2002). "Ambiguity exists when a contract is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." <u>Zurich Am. Ins. Co. v. ABM Indus.</u>, 397 F.3d 158, 164 (2d Cir. 2005) (citation and quotation marks omitted). At the summary judgment stage, all ambiguities and reasonable inference must be resolved in the light most favorable to the non-moving party. <u>United States v. One Tintoretto Painting Entitled "The Holdy Family with St. Catherine and Honored Donor"</u>, 691 F.2d 603, 606 (2d Cir. 1982) (citation omitted).

There is no dispute as to whether there was an agreement and whether RoundPoint performed its duties under the Contract. Furthermore, it is clear that RoundPoint suffered

damages if it was entitled to indemnification from Five Brothers because Five Brothers has not paid any of RoundPoint's legal fees incurred during the Hayes Litigation. RoundPoint argues that Five Brothers breached the contract by not indemnifying RoundPoint for three reasons: (1) The Hayes Litigation is at least partially based on allegations made against Five Brothers (Doc. No. 54 at 13); (2) Five Brothers failed to complete the property preservation work within the time period provided in the Agreement, (Doc. No. 54 at 14); and (3) Five Brothers' agent, Mr. Stuart, acted negligently and RoundPoint was sued for his negligence, (Doc. No. 54 at 15). Five Brothers admits the existence of the indemnification clause in the Contract and does not seriously argue that Five Brothers is entirely immune from paying any fees under the indemnification clause—Five Brothers contests what those fees should be, but does not contest that some payment is owed. Accordingly, Five Brothers has breached the indemnification clause and RoundPoint is entitled to damages as a matter of law.

With the breach determined, the Court reaches the heart of the matter—for what claims in the Hayes' litigation must Five Brothers indemnify RoundPoint. RoundPoint asserts that Five Brothers must pay RoundPoint for all expenses incurred defending the Hayes Litigation. Five Brothers contests that its liability should be much narrower, limited only to reasonable fees incurred defending Five Brothers' (and Mr. Stuart's) actions—not RoundPoint's (or SHCU's) conduct.

      b. <u>Whether Five Brothers Must Indemnify RoundPoint for its Own Negligence</u>

Five Brothers argues that there is a material factual dispute over whether the contract expresses the intent of Five Brothers to indemnify Plaintiff RoundPoint for its own actions and negligence. (Doc. No. 56 at 12–14). The Court finds there is no genuine dispute of material fact

and the Contract includes indemnification for RoundPoint's own actions and negligence so long as those actions or negligence are connected to Five Brothers.

Under New York law, "[a] party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances.'" Drzewinski v. Atlantic Scaffold & Ladder Co., 515 N.E.2d 902, 904 (N.Y. 1987) (quoting Margolin v. New York Life Ins. Co., 297 N.E.2d 80, 82 (N.Y. 1973)). A contract assuming an indemnity obligation "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Tonking v. Port Auth. of N.Y. & N.J., 821 N.E.2d 133, 135 (N.Y. 2004). Notwithstanding this strict construction, New York courts have found that a contract need not expressly mention the indemnitee's negligence for it to be covered—broad language such as "any and all loss" or "all claims and demands of whatsoever kind or nature" is sufficient. See Levine v. Shell Oil Co., 269 N.E.2d 799, 802 (N.Y. 1971). In Levine, the Court overruled prior New York precedent when it concluded that Shell Oil Company, who leased a gas station to Visconti, was entitled to indemnification from Visconti for an explosion and fire that occurred on the premise because the lease contained an indemnification clause that included indemnification for "any and all claims . . . caused by or happening in connection with the premise . . . ." The Court explained:

> "Since the plain meaning of these words fairly includes the liability for the active negligence of Shell, we see no reason why more should be required to establish the unmistakable intent of the parties. A contrary construction would result in the conclusion that the clause was a nullity. Surely, this could not have been the intent of the parties."

Id. at 802–03. "Thus, a New York court is likely to enforce an indemnity provision where it contains broad, all-inclusive language, even if there is no language expressly referring to the negligence of the indemnitee." Aruba Petroleum, Inc. v. FCS Advisors, Inc., 2014 WL

12596586, at *8 (E.D.N.Y. Feb. 4, 2014). But the reach of broad, all-inclusive indemnification language should not be construed so far as to indemnify for costs that cannot be reasonably inferred from the intent of the parties. Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp., 487 N.Y.S.2d 428, 431 (N.Y. App. Div. 1985) ("The language of an indemnity provision should be construed so as to encompass only that loss and damage which reasonably appear to have been within the intent of the parties. It should not be extended to include damages which are neither expressly within its terms nor of such character that it is reasonable to infer that they were intended to be covered under the contract."), aff'd 484 N.E.2d 1047 (N.Y. 1985).

In light of the broad, all-inclusive language in the Contract, Five Brothers' contentions that the Contract does not encompass indemnification of RoundPoint's own negligence are unfounded—to a degree. Although the indemnification clause does state that indemnity extends to "alleged acts, errors, or omissions . . . committed by Five Brothers . . . ," the Contract also provides that Five Brothers shall indemnify RoundPoint for "any and all liabilities, expenses, demands, suits, judgments, losses, claims, injuries damages, penalties, fines, forfeitures, attorneys fees and costs of any kind whatsoever . . . arising from or in any way connected with Five Brothers." (Doc. No. 1-1 at 4). The latter language is pivotal. Based on the New York precedent discussed above, the language "any and all" liabilities, claims, etc. supports an intent of the parties for Five Brothers to indemnify RoundPoint for RoundPoint's own actions or negligence, but the claims must be connected with Five Brothers as provided in the Contract.

The complaint in the Hayes Litigation espoused certain claims which were asserted against both RoundPoint and Five Brothers and other claims that were asserted against RoundPoint but not Five Brothers. Specifically, Causes of Action 1–5 of the complaint in the Hayes Litigation were not asserted against Five Brothers and deal solely with the mortgage and

foreclosure process RoundPoint and SHCU handled—not the property preservation Five Brothers and Mr. Stuart did. Indeed, Ms. Hayes could have sued RoundPoint and SHCU for Causes of Action 1–5 alone and Five Brothers would not have been involved because it is not connected to those claims, at least not under any reasonable definition of connected. Thus, the Court declines to find as a matter of law that RoundPoint is entitled to indemnification from Five Brothers for costs incurred defending Causes of Action 1–5 of the Hayes Litigation and RoundPoint's Motion for Summary Judgment is denied to the extent that it seeks reimbursement of those costs.

RoundPoint and Five Brothers argue for greater and lesser indemnification than the Court concludes. RoundPoint suggests that the Hayes Litigation was set in motion due to Five Brothers and Mr. Stuart's trespasses, and therefore the entire Hayes Litigation is connected to Five Brothers, which should lead to full indemnification for RoundPoint. (Doc. No. 57 at 9). Additionally, RoundPoint notes that the Contract provides for indemnification for the "action or proceeding" and those words would be rendered meaningless if Five Brothers is not required to pay for the full costs of the Hayes Litigation. (Id. at 8–9). Five Brother asserts that Causes of Action 10, 14, 15, 16, and 17 can be broken into subparts and only the specific allegations against Five Brothers should be eligible for indemnification. (Doc. No. 56 at 13). Neither argument is convincing. First, the Court finds the causal connection RoundPoint asserts to be a disputed fact, and further that indemnification for claims not brought against Five Brothers and not connected to Five Brothers' service of the contract or the property cannot be "clearly implied by the language and purposes of the entire agreement, and the surrounding facts and circumstances." Margolin, 297 N.E.2d at 82. Thus, notwithstanding the broad "action or proceeding" language, drawing reasonable inferences in favor of Defendant Five Brothers, the

Contract is at least ambiguous as to whether Five Brothers must indemnify RoundPoint for the full costs of an action or proceeding, even when a large portion of that proceeding is unrelated to Five Brothers. Second, Five Brothers' proposal to break the allegations in the Hayes Litigation into subparts is both impracticable and contrary to the law and the language of the contract. Specifically, the Contract provides that "Five Brothers shall assume full responsibility for payment of the cost, defense, and settlement of such claim, action, or proceeding." While the terms action and proceeding lend themselves to more ambiguity, for example whether they apply to an entire multi-defendant lawsuit, the term claim is much narrower and unambiguously encapsulates an entire cause of action. Causes of action 10, 14, 15, 16, and 17 were claims made against Five Brothers, in addition to RoundPoint, and therefore Five Brothers must indemnify RoundPoint for the costs incurred defending those claims based on the plain language of the Contract, even making all reasonable inferences in favor of Five Brothers.

    c. <u>Whether Five Brothers Must Indemnify RoundPoint for Expenses Incurred on Behalf of SHCU</u>

In addition to legal expenses incurred defending itself, RoundPoint seeks legal expenses incurred defending SHCU. (Doc. Nos. 57 at 10–12; 56-23 at 2). Five Brothers contends that the language of the contract is ambiguous as to whether RoundPoint may be indemnified for claims against SHCU, who was also sued by Ms. Hayes and is the owner of the note on the property at issue. (Doc. No. 56 at 14–16). RoundPoint paid to defend the claims against SHCU in the Hayes Litigation and the legal fees and costs incurred on behalf of SHCU are included in RoundPoint's request for indemnification. Five Brothers argues that there is a material factual dispute on whether it is required to pay for fees incurred on behalf of SHCU, who was not a party to the Contract with the indemnification provision. The Court agrees.

The Contract states Five Brothers shall indemnify "RoundPoint and each of [its] affiliates, subsidiaries, employees, officers, directors, members, owners, shareholders, representatives and agents." (Doc. No. 1-1 at 4). Yet, by RoundPoint's own admission, SHCU was not even an affiliate, subsidiary, employee, officer, director, member, owner, shareholder, representative or agent. (Doc. No. 56-22 at 2–3). RoundPoint rebuts that RoundPoint incurred the costs to defend SHCU and therefore they are RoundPoint's costs and entitled to reimbursement. (Doc. No. 57 at 10–12). This interpretation is not reasonable and would result in absurd outcomes if true. The Contract clearly specifies numerous categories of persons that are covered by the indemnification clause and SHCU does not appear to fall into any of those broad categories. At bare minimum, there is a genuine material fact in dispute regarding Five Brothers' obligation to pay legal costs incurred by RoundPoint in defending claims against SHCU based on the language of the contract, notwithstanding any asserted belief by RoundPoint that any expenses borne by RoundPoint should be indemnified regardless on behalf of who the expenses were incurred. See (Doc. No. 56-23). Accordingly, RoundPoint's Motion for Summary Judgment is denied to the extent it seeks indemnification for costs incurred on behalf of SHCU.

    d. <u>Whether RoundPoint's Alleged Attorney Fees Are Reasonable</u>

Finally, Five Brothers argues that RoundPoint's attorney fees are unreasonable and excessive. (Doc. No. 56 at 16–19). Five Brothers states that it is RoundPoint's burden to submit sufficient evidence to support the hours worked and rates claimed, <u>see</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983), and that a genuine issue of material fact exists regarding whether the fees alleged are reasonable. Under federal law, courts are to consider the following factors when determining whether fees are reasonable:

> (1) hours which reflect the inefficiency or duplication of services should be discounted;
> (2) hours that are excessive, unnecessary or which reflect "padding" should be disallowed;
> (3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation of facts and other types of work that can be accomplished by nonlawyers who command lesser rates;
> (4) time spent in court should be differentiated from time expended for out-of-court services; and
> (5) the hours claimed should be weighed against the court's own knowledge, experience and expertise as to the time required to complete similar activities.

Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 282 (E.D.N.Y. 2008) (citation omitted). Five Brothers argues further that the legal invoices submitted by RoundPoint contain numerous entries of block billing, vague entries, duplication of services, clerical work, and "padding," all of which can be reduced under federal law. (Doc. No. 56 at 19). Also, Five Brothers contends that some of the entries submitted concern an unrelated state court foreclosure proceeding. (Id.).

The Court understands Five Brothers' contentions, but summary judgment is not the appropriate time to decide the exact damages at stake here. See McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1315–16 (2d Cir. 1993) ("[T]he amount of attorneys' fees, even when awarded under a contract, is a post-judgment matter collateral to a decision on the merits . . . [it is] not an issue of fact that require[s] proof at trial; it [is] an issue for the court to review after a finding of liability."). Accordingly, the Court denies RoundPoint's Motion for Summary Judgment to the extent it seeks a specific award of damages at this stage.

IV. **CONCLUSION**

1. Plaintiff RoundPoint's Motion for Summary Judgment, (Doc. No. 53), is **GRANTED in part** and **DENIED in part**. Specifically, RoundPoint is entitled to indemnification by Five Brothers for RoundPoint's legal fees incurred defending itself and settling Counts 6–19 in the Hayes Litigation as a matter of law. The Court denies Plaintiff's

request for summary judgment to the extent it seeks indemnification by Five Brothers for claims that were not alleged against Five Brothers in the Hayes Litigation (Causes of Action 1–5) and to the extent it seeks indemnification of fees incurred on behalf of SHCU; and

2. This matter will proceed to a bench trial on or after July 10, 2017 regarding Plaintiff's claims that it should be indemnified by Defendant for costs incurred in the Hayes Litigation defending itself from Causes of Action 1–5 and defending SHCU from the allegations in the Hayes Litigation, in addition to the amount of damages to which Plaintiff is entitled.

Signed: June 23, 2017

Robert J. Conrad, Jr.
United States District Judge