IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CV-00559-RJC-DCK

| | |
|---|---|
| ROUNDPOINT MORTGAGE SERVICING CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) FIVE BROTHERS MORTGAGE ) COMPANY SERVICES AND ) SECURING, INC., ) ) Defendant. ) ) | **ORDER** |

## I. INTRODUCTION

Plaintiff RoundPoint Mortgage Servicing Corporation ("Plaintiff" or "RoundPoint") and Defendant Five Brothers Mortgage Co. Services & Securing, Inc. ("Defendant" or "Five Brothers") dispute which of the parties should pay for which legal fees pursuant to an indemnification clause contained in a contract between RoundPoint, Five Brothers, and 24 Asset Management. RoundPoint and Five Brothers had a contract called the Tri-Party Field Services Agreement (the "Contract"), (Pl. Ex. 2). Under the Contract, Five Brothers was to perform inspections and property preservation on properties for which RoundPoint had provided loan services. Litigation ("Hayes Litigation") arose related to one of the properties in 2013 when a property owner filed a lawsuit against several parties including RoundPoint and Five Brothers. Both RoundPoint and Five Brothers retained their own counsel and bore their own legal fees. The issue at hand is the amount Five Brothers must indemnify RoundPoint for costs RoundPoint incurred in defending itself in the Hayes Litigation. Following a bench trial on July 18 and 19, 2017, the Court makes the following Findings of Fact and Conclusions of Law, ultimately

concluding that Five Brothers owes RoundPoint $153,107.16 in legal fees incurred during the Hayes Litigation.

## II. FINDINGS OF FACT

RoundPoint is a mortgage servicer based out of Charlotte, North Carolina. (Trial Transcript at 8 (hereinafter "Tr.")). Five Brothers provides property preservation services nationwide. (Id. at 271). RoundPoint and Five Brothers entered into a contract on December 2, 2011 entitled the "Tri-Party Field Services Agreement" (the "Contract"). (Pl. Ex. 2). Under the Contract, Five Brothers would perform inspection and property preservation services on properties secured by mortgage loans that RoundPoint serviced. (Id.). The Contract included an indemnification clause that stated:

> Five Brothers shall indemnify and hold harmless 24 Asset and RoundPoint from any and all liabilities, expenses, demands, suits, judgments, losses, claims, injuries, damages, penalties, fines, forfeitures, attorney's fees and costs, of any kind whatsoever (each a "Loss" and collectively, "Losses"), arising from or in any way connected with Five Brothers:
>
> i) Violation of any law or regulation;
> ii) Non-compliance with the terms of this Agreement or the breach of any warranty or representation set forth in this Agreement, including all exhibits and any other agreements incorporated in this Agreement by reference.
> iii) Any claims or actions whatsoever brought by any subcontractor hired by Five Brothers
> iv) Negligent, wrongful acts or misconduct by Five Brothers, its employees, officers, directors, agents, contractors or subcontract;
> v) Any claims or actions brought by a third party alleging death or injury to any person or damage to or destruction of (whether fully or partially) property arising out of an act, error, or omission by Five Brothers; or
> vi) Any mistakes by Five Brothers relating to the performance of the Services herein.

(Id. at 4–5). The Contract also included the following language:

> It is expressly understood that this indemnity shall extend to any and all alleged acts, errors, or omissions (whether willful, intentional, negligent, or grossly negligent) committed by Five Brothers, its agents, employees, subcontractors, or

> independent contractors, while performing any services for RoundPoint. Five Brothers shall assume full responsibility for payment of the cost, defense and settlement of such claim action or proceeding.

(Id. at 5). Self-Help Services Corporation, doing business as Self-Help Credit Union ("SHCU"), was the owner of a 30-year mortgage loan to Annette Hayes ("Hayes"). (Tr. at 13; Pl. Ex. 1 at ¶22). SHCU contracted with RoundPoint to service the loan to Hayes. (Tr. at 14; Pl. Ex. 1 at ¶31).

In January 2010, RoundPoint informed Ms. Hayes—who owned a condominium in Wilson, NC—that her loan was in default. (Pl. Ex. 1 at ¶¶19, 33). According to Ms. Hayes' complaint, she negotiated a repayment plan with RoundPoint, which she subsequently honored. Ms. Hayes stated that RoundPoint nonetheless instituted a foreclosure action, obtained a foreclosure, and proceeded with plans to sell Ms. Hayes' condo. (Id. at ¶¶34–39). Specifically, on June 9, 2010, RoundPoint caused the substitute trustee to initiate a foreclosure proceeding in Wilson County (the "June 2010 Foreclosure"). (Id. at ¶34). On July 15, 2010, the Wilson County Clerk entered an order of foreclosure authorizing the substitute trustee to proceed with the foreclosure sale. (Id. at ¶38).

Ms. Hayes alleged that she continued to make mortgage payments as scheduled but endured "incomprehensible errors by Defendant RoundPoint in properly crediting her mortgage payments and in continuing to pursue foreclosure proceedings that [Ms. Hayes] had been assured were abated as a result of her compliance with the repayment plan . . . ." (Id. at ¶42). Ms. Hayes' condo was eventually sold at public auction to the sole bidder SHCU. (Id. at ¶43). Ms. Hayes' further alleged that after filing bankruptcy and causing a stay of the foreclosure related-activity, she became current with her mortgage, which was not recognized due to errors by RoundPoint. (Id. at ¶¶45–56).

Part and parcel to foreclosing on Ms. Hayes' condo, RoundPoint, on behalf of SHCU, attempted to secure the condo through Five Brothers and its agent, Douglas Allan Stuart ("Stuart"), which Ms. Hayes' alleged amounted to trespassing. (Id. at 54). First, on March 1, 2013, Mr. Stuart, acting as Five Brothers' agent, entered Ms. Hayes' property to install a padlock and thereby locked Ms. Hayes out of her condo—an "unlawful self-help eviction" according to Ms. Hayes. (Id.). Although Ms. Hayes regained access to her condo in the following days, Mr. Stuart, acting on behalf of Five Brothers, again entered Ms. Hayes condo on March 17, 2013 and secured it with a padlock in "a second unlawful self-help eviction." (Id. at 56). Ms. Hayes alleged that these "unlawful tactics are part of a pattern of misconduct by Defendant Five Brothers and its employees nationwide, as reflected in numerous civil suits filed against the company" (Id. at 57) (citing civil suits in Maryland, New York, Florida, and Michigan). Ms. Hayes further alleged that as part of the second trespass her sinks, toilets, and other utilities were taped off "with tape from Defendant Five Brothers," some of her personal effects had been moved, and her hot water heater was damaged, consequently leaking in Ms. Hayes' condo. (Id. at 60).

On August 21, 2013 Ms. Hayes filed a lawsuit against SHCU, RoundPoint, Five Brothers, and Mr. Stuart—the Hayes Litigation. (Pl. Exs. 1, 16); Hayes v. Self-Help Servs. Corp., et al., 13-CVS-004223 (N.C. Sup. Ct. Aug. 21, 2013)).[1] The complaint contained nineteen causes of action: (1) wrongful foreclosure; (2) attempted wrongful foreclosure; (3) abuse of process; (4) breach of the implied covenant of good faith and fair dealing; (5) unjust enrichment; (6) trespass on March 1, 2013; (7) trespass on March 17, 2013; (8) fraud; (9) tortious interference with contract; (10) defamation per se; (11) intentional infliction of emotional distress; (12) Negligent Infliction of

---

[1] The case was removed to the U.S. District Court for the Middle District of North Carolina on October 2, 2013. Hayes v. Self-Help Servs. Corp., et al., 1:13-cv-00880-CCE-JLW (M.D.N.C. Oct. 2, 2013). (Pl. Ex. 16).

Emotional Distress; (13) Negligent Hiring and Supervision; (14) violation of the North Carolina Unfair and Deceptive Trade Practices Act; (15) violation of the North Carolina Collection Agency Act; (16) violation of the North Carolina Debt Collection Act; (17) violation of the Federal Fair Debt Collection Practices Act; (18) violation of the federal Civil Rights Act of 1871; and (19) civil conspiracy. (Pl. Ex. 1). All nineteen causes of action were asserted against RoundPoint. (Id.). Seventeen causes of action were asserted against SHCU (Causes of Action 1–16, 19). (Id.). Fourteen causes of action were asserted against Five Brothers (Causes of Action 6–19). (Id.). Thirteen causes of action were asserted against Mr. Stuart (Causes of Action 6–12, 14–19). (Id.).

Five Brothers filed a motion for judgment on the pleadings and RoundPoint and SHCU jointly did the same. On August 22, 2014, the Court issued an order wherein it partially granted and partially denied both motions. (Pl. Ex. 17). Following motions to dismiss and motions for summary judgment, only a claim of trespass against all defendants for the March 17, 2013 property-preservation visit remained. The lawsuit settled for a total of $15,500 with $5,000 each from Five Brothers, Mr. Stuart, and RoundPoint and SHCU collectively. RoundPoint and SHCU contributed an additional $500 after further settlement discussions. (Id. at 178–89). The legal fees and expenses from Hunoval Law Firm for representing RoundPoint and SHCU was $381,403.16. (Pl. Ex. 4). Five Brothers was represented by Hutchens Law Firm during the Hayes Litigation and incurred $54,824.05 in legal fees in defending itself. (Def. Ex. 1; Tr. 112–13, 142–43). Mr. Stuart's attorney billed $72,168.89 for his representation of Mr. Stuart in this lawsuit. (Trial Tr. 288).

After RoundPoint sent two demand letters, Five Brothers refused to indemnify RoundPoint so the parties unsuccessfully attempted to mediate their dispute. Consequently, RoundPoint filed this lawsuit containing a single claim for breach of contract on November 18, 2015 seeking

damages for the $5,500 settlement amount and the $381,403.16 it incurred in legal expenses and costs in defense of the Hayes Litigation. (Doc. No. 1; Doc. No. 54 at 14). On January 20, 2016, Five Brothers filed an answer, counterclaim, and indemnification demand seeking reimbursement for Five Brothers' expenses in the Hayes Litigation. (Doc. No. 8). On December 16, 2016, Plaintiff RoundPoint moved for summary judgment in its favor. (Doc. No. 53). Five Brothers timely filed an opposition brief and RoundPoint timely filed a reply brief. (Doc. Nos. 56 and 57). On March 6, 2017, this Court heard oral arguments on RoundPoint's Motion and partially granted the Motion—specifically, granting RoundPoint's Motion regarding Five Brothers' counterclaim and indemnification demand. In a subsequent written order, the Court partially granted and partially denied RoundPoint's Motion for Summary Judgment. (Doc. No. 61). Specifically, the Court held that RoundPoint is entitled to indemnification by Five Brothers for RoundPoint's legal fees incurred defending itself and settling Counts 6–19 in the Hayes Litigation as a matter of law. (Id.). The Court denied Plaintiff's request for summary judgment to the extent it sought indemnification by Five Brothers for claims that were not alleged against Five Brothers in the Hayes Litigation (Causes of Action 1–5) and to the extent it sought indemnification of fees incurred on behalf of SHCU. (Id.). The Court also reserved for trial the issue of whether the attorneys' fees incurred by RoundPoint were reasonable. (Id.).

The Court conducted a two-day bench trial on July 18–19, 2017. Over the course of the proceedings, the Court heard testimony from five witnesses: Nathan Boucher, General Counsel for RoundPoint; Tom Kalas, General Counsel for Five Brothers; Christi Hunoval, Partner at Hunoval Law Firm; Jeffery Bunda, Associate at Hutches Law Firm; and Jonathan Buchan, who provided expert testimony. Additionally, the Court received thirty-one exhibits into evidence. (Doc. No. 79). In reaching a determination on the amount Five Brothers must indemnify RoundPoint, the

Court has considered all the testimony and evidence presented and has taken into consideration the credibility of the witnesses and relevance and weight of the evidence.

### III. CONCLUSIONS OF LAW

The remaining legal disputes in this matter boil down to two questions: (1) what is the scope of the indemnification clause; and (2) what constitutes reasonable attorney fees under the circumstances. Ultimately, the Court concludes that the indemnification clause does not provide for the full indemnification of all legal fees incurred defending the Hayes Litigation that RoundPoint seeks. Rather, some of the legal fees sought are clearly excluded by the plain language of the Contract. Because the extensive legal invoices can't be easily parsed, the Court will utilize the lodestar method to determine the reasonable amount of legal fees that Five Brothers owes RoundPoint pursuant to the indemnification clause.

   A. <u>The Scope of the Indemnification Clause</u>

Pursuant to the terms of the Contract, New York law governs the alleged breach of contract claim at issue. Under New York law, a "written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." <u>Greenfield v. Philles Records</u>, 98 N.Y. 2d 562, 569 (2002). "Whether a contractual term is ambiguous must be determined by the court as a matter of law, looking solely to the plain language used by the parties within the four corners of the contract to discern its meaning and not to extrinsic sources." <u>Ashwood Capital Inc. v. OTG Management, Inc.</u>, 99 A.D.3d 1, 7–8 (N.Y. Sup. Ct. 2012). A contract assuming an indemnity obligation "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." <u>Tonking v. Port Auth. of N.Y. & N.J.</u>, 821 N.E.2d 133, 135 (N.Y. 2004). "A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire

agreement and the surrounding facts and circumstances." Drzewinski v. Atlantic Scaffold & Ladder Co., 70 N.Y.2d 774 (1987) (citing Maroglin v. New York Life Ins. Co., 32 NY 2d 149,153 (1973)).

The indemnification clause in the Contract is not ambiguous and therefore will be applied using the plain meaning of its terms. Among other things, the indemnification clause is thorough and details what liabilities are covered, what actions Five Brothers is responsible for, and what entities and people are covered. Both the Contract and the clause are clear, complete, and unambiguous—which one would expect from two sophisticated business entities such as the parties here.

The disputed clause in this case is similar to the indemnification clause at issue in Levine v. Shell Oil Co., 269 N.E.2d 799 (N.Y. 1971). In Levine, the Court overruled prior New York precedent when it concluded that Shell Oil Company, who leased a gas station to an individual, was entitled to indemnification from that individual for an explosion and fire that occurred on the premise because the lease contained an indemnification clause that included indemnification for "any and all claims . . . caused by or happening in connection with the premise . . . ." The Court explained:

> Since the plain meaning of these words fairly includes the liability for the active negligence of Shell, we see no reason why more should be required to establish the unmistakable intent of the parties. A contrary construction would result in the conclusion that the clause was a nullity. Surely, this could not have been the intent of the parties.

Id. at 802–03. "Thus, a New York court is likely to enforce an indemnity provision where it contains broad, all-inclusive language, even if there is no language expressly referring to the negligence of the indemnitee." Aruba Petroleum, Inc. v. FCS Advisors, Inc., 2014 WL 12596586,

at *8 (E.D.N.Y. Feb. 4, 2014).  Accordingly, this Court will apply the Contract, specifically the indemnification clause, using the plain meaning of its words.

Under the plain meaning of the words in the indemnification clause, the Court finds that the indemnification clause requires Five Brothers to indemnify RoundPoint for reasonable fees and expenses incurred in the Hayes Litigation related to Ms. Hayes' fourth cause of action, in addition to reasonable fees and expenses incurred defending Causes of Action 6–19 from the Hayes Litigation, which the Court found Five Brothers liable for on summary judgment.  The clause does not, however, impose on Five Brothers an obligation to indemnify RoundPoint for fees and expenses incurred related to Causes of Action 1, 2, 3, and 5; incurred in providing a defense of SHCU; or incurred litigating the related foreclosure proceeding.

### 1. Fees and Expenses Incurred Defending Ms. Hayes' Fourth Cause of Action— Breach of Contract and Implied Covenants

Although Ms. Hayes only asserted the fourth cause of action—breach of contract and implied covenants—against RoundPoint and SHCU, the language of the claim clearly encompasses Five Brothers, its conduct, and the conduct of its agents, specifically Mr. Stuart.  For example, as part of her breach of contract and implied covenants claim, Ms. Hayes alleged that RoundPoint and SHCU breached their contract by "improperly foreclosing upon and unlawfully selling [her] home, as well as hiring agents to defame [her], trespass upon her lands twice, break into her home twice, and lock her out twice."  (Pl. Ex. 1 ¶113).  Because this claim related to the lockouts, i.e. Five Brothers' (and its agent's) conduct, Five Brothers must indemnify RoundPoint for expenses it incurred defending itself against the fourth cause of action.

### 2. Fees and Expenses Incurred Defending Against Ms. Hayes' First, Second, Third, and Fifth Causes of Action

Unlike Ms. Hayes' Fourth Cause of Action and the causes of action explicitly asserted against Five Brothers, the conduct alleged in Ms. Hayes' First, Second, Third, and Fifth Causes of Action are not "arising from or in any way connected with Five Brothers." Not only were these claims not asserted against Five Brothers, they in no way related to Five Brothers or its agents. The First and Second Causes of Action—Wrongful Foreclosure and Attempted Wrongful Foreclosure—are on their face related to the foreclosure process, a process that involved RoundPoint and SHCU, but not Five Brothers. Similarly, Ms. Hayes' Third and Fifth Causes of Action, for Abuse of Process and Unjust Enrichment, both related to the maintenance of Ms. Hayes' mortgage, including collection of payments and the foreclosure proceedings. Yet again, neither of these claims is connected with Five Brothers or relates to its conduct as required under the indemnification clause in the Contract.

RoundPoint contends that the entire Hayes' Litigation was precipitated by the two trespasses, which are connected to Five Brothers' conduct, and therefore, Five Brothers should bear the full financial responsibility of indemnifying RoundPoint for all causes of action in the Hayes Litigation. This line of reasoning is neither borne out by the facts nor supported by the language of the Contract. Although criticized by the Court in the Hayes Litigation for being too "colorful" and relying on "adjectives not arguments," the language used by the lawyers is instructive for our purposes. (Pl. Ex. 17); Hayes v. Self-Help Credit Union, et al., 1:13-cv-00880-CCE-JLW (M.D.N.C. Aug. 22, 2014). The complaint is unequivocal in its condemnation of RoundPoint's foreclosure practices, accusing it of "incomprehensible errors;" "various accounting failures;" "inscrutable case of history repeating itself," of being "untruthful," committing "habitual and glaring errors in basic mathematics," a "steadfast refusal to properly credit" and "[g]iving new meaning to Defendant SHCU's 'self-help' monitor." (Pl. Ex. 1). All this language is directed at

RoundPoint and SHCU and most of it is directed at conduct that occurred before the Tri-Party Field Services Agreement was executed. This is not a mere trespass case as RoundPoint has attempted to frame it. Accordingly, RoundPoint is not entitled to indemnification for fees incurred related to Ms. Hayes' First, Second, Third, and Fifth Causes of Action..

### 3. Fees and Expenses Incurred Defending Self-Help Credit Union in the Hayes Litigation

Additionally excluded from indemnification under the plain meanings of the terms in the Contract are the fees and expenses RoundPoint incurred defending SHCU against the claims in the Hayes Litigation. Not only was SHCU not a party to the Contract, RoundPoint openly admitted at trial and prior to trial that the indemnification clause did not explicitly cover fees incurred by SHCU. The indemnification clause enumerated the recipients of indemnification: "24 Asset and RoundPoint and each of their respective affiliates, subsidiaries, employees, officers, directors, members, owners, shareholders, representatives and agents." (Pl. Ex. 2 at 5). According to RoundPoint's General Counsel, SHCU was none of these. (Tr. at 89). Nonetheless, RoundPoint argues that it should be reimbursed for the fees related to SHCU's defense because they were fees incurred by RoundPoint, and thus fall under the language of the Contract. The Court cannot adopt this strained interpretation. Given the clarity with which the contracting parties enumerated the relationships covered by the indemnification clause, the Court must interpret the clause under the plain meaning and not infer any other relationships to fall under this provision. Furthermore, RoundPoint's interpretation would lead to absurd results. Under RoundPoint's view, RoundPoint could choose to pay for any and all legal expenses of any and all parties, and could force Five Brothers to indemnify RoundPoint for those expenses so long as there was some connection to Five Brothers. Lastly, RoundPoint's intent and understanding of the Contract—which RoundPoint

argues supports full indemnification of RoundPoint for fees incurred defending SHCU—are irrelevant because the words of the Contract are not ambiguous.

### 4. Fees and Expenses Incurred Litigating the Related Foreclosure Proceeding Against Ms. Hayes

A third category of fees for which RoundPoint seeks indemnification, but for which it is not entitled, is fees incurred related to the separate foreclosure proceeding instituted against Ms. Hayes. On June 9, 2010, RoundPoint filed a foreclosure action against Ms. Hayes because she was in default on her mortgage. As the Hayes Litigation subsequently progressed, RoundPoint apparently used the foreclosure action, specifically an amended notice of foreclosure sale, as leverage against Ms. Hayes in the Hayes Litigation—hoping that it could be used to force her to drop or settle the claims against RoundPoint. While this may indeed have been RoundPoint's litigation strategy, it does not entitle RoundPoint to reimbursement from Five Brothers. The foreclosure proceeding was a separate action that did not involve Five Brothers and began well before Five Brothers entered into the Contract with RoundPoint. Simply put, the costs RoundPoint incurred in this foreclosure proceeding are outside the scope of the Contract and need not be indemnified under the plain meaning of the terms in the Contract.

B. <u>Reasonable Attorneys' Fees</u>

Under federal law, courts are to consider the following factors when determining whether fees are reasonable:

(1) hours which reflect the inefficiency or duplication of services should be discounted;
(2) hours that are excessive, unnecessary or which reflect "padding" should be disallowed;
(3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation of facts and other types of work that can be accomplished by nonlawyers who command lesser rates;
(4) time spent in court should be differentiated from time expended for out-of-court services; and

> (5) the hours claimed should be weighed against the court's own knowledge, experience and expertise as to the time required to complete similar activities.

Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 282 (E.D.N.Y. 2008) (citation omitted). The plaintiff must present evidence that the fees are reasonable but "it remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d. Cir. 1998). "When a contract provides for an award of attorney fees, the jury is to decide at trial whether a party may recover attorney fees [. . .] then the judge is to determining a reasonable amount of fees." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (1993). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 435. "For purposes of determining the reasonable hourly rate, '[t]he relevant community to which the court should look is the district in which the case was brought.'" Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F.Supp.2d 274, 280 (E.D.N.Y. 2006) (citing Marisol A. Giuliani, 111 F.Supp.2d 381, 386 (S.D.N.Y. 2000)).

"Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claims 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149 (2d Cir. 1983). "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hensely, 461 U.S. at 433. "If the documentation is inadequate, the court may reduce the award accordingly." Id. at 433–434. "The Court should, however, deduct any hours for work that was

'excessive, redundant or otherwise unnecessary'." Bobrow Palumbo Sales, Inc., 549 F. Supp. 2d at 282 (citing Hensely, 461 U.S. at 434). "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989).

In determining the amount of reasonable fees this Court will not place itself in the shoes of RoundPoint's General Counsel to complete the task of line-by-line analysis that should have been done upon the receipt of the bill. This Court's duty is to determine what is reasonable based on the evidence presented and its understanding of the case. See Gierlinger v. Gleason, 160 F.3d 858, 876 (2d. Cir. 1998). This determination comes after the liability of one party to pay the other has been determined through trial. See McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (1993). Here, both parties differed on their understanding of what was reasonable, and in the Court's opinion demonstrated opposite ends of the spectrum. Mr. Bouche stated many times in trial that "[i]f the work was done, then I would pay the bill." (Tr. at 87, 88). On the other hand, Mr. Kalas expressed his shock at seeing invoices of RoundPoint's legal fees, described them as "a billing frenzy" and "unethical," and said that he would have terminated the firm after the first bill of $7,541.00 and filed a grievance. (Id. at 289–90). The Court adopts neither of these approaches.

The Court first turns to the lodestar method as recommended by the Supreme Court in Hensley, 461 U.S. at 433. This method entails multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. In calculating the number of hours, the Court excludes hours that were not reasonably expended. Id. at 434. Thereby, the Court can exclude hours due to overstaffing, experience of attorneys, or excessive, redundant, or otherwise unnecessary billing. Id.

As made clear through Hunoval's billing invoices and the related-testimony, some hours reflected in the billing were excessive. For instance, there were multiple billers expending lengthy amounts of time just to view pleadings. (Tr. at 206–08). In another example, Hunoval billed "8.6 hours of work for a two paragraph letter citing two rules of civil procedure." (Tr. 237–41). Such billing creates calls into question the reasonableness of the billing.

Additionally, the Court considers the amount of hours expended and fees paid by the other defendants who ultimately defended against the same claims in the Hayes Litigation. Five Brothers incurred $54,630.30 defending themselves and $72,168.89 in defending Mr. Stuart from the same claim. RoundPoint incurred over $381,000 in defending its claim. Despite RoundPoint's position that this is merely a trespass case, not even Mr. Bouche would pay $381,000 for a trespass case. The Court finds that a deduction in total fees is appropriate given the amount of excessive and redundant billing that pervades the Hunoval invoices. At the same time, the Court concludes that Hunoval's rates were reasonable, including the $265 per hour billed by Ms. Hunoval. See (Tr. at 97). Indeed, Defendant did not contest the reasonableness of the hourly rate. (Id. at 6).

When analyzing the hours of work billed by Hunoval in light of the multiple duplicate entries, the separate foreclosure action, defense of SHCU, and excessive padding, the Court finds it is reasonable to reduce the hours billed from 1,900 to 400 hours. This amount is equal to the most time billed by another party in representing a defendant in the Hayes Litigation. The rate of $265 is a reasonable rate as noted by Mr. Buchan. Applying a $265 per hour rate to 400 hours using the lodestar method results in a total of $106,000.00 in attorney fees. Since Hunoval, on behalf of RoundPoint, took the lead in the Hayes Litigation, the Court will apply a 25% increase in fees awarded to compensate for that role, putting total fees at $132,500.00. Additionally, RoundPoint is entitled to indemnification for the costs associated with the litigation. See U.S.

Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989) ("[A]ttorney's fees include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."). The costs Hunoval incurred totaled $15,607.16. (Pl. Ex. 4). Finally, RoundPoint is entitled to indemnification for its share of the initial settlement amount—$5,000.00.[2] In total, Five Brothers is ordered to indemnify RoundPoint $153,107.16.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Judgment is entered against Five Brothers in favor of RoundPoint. Five Brothers is liable to RoundPoint in the amount of $153,107.16, plus interest as allowed by applicable law.

2. The Clerk of Court is respectfully directed to enter judgment and close this case.

Signed: March 30, 2018

Robert J. Conrad, Jr.
United States District Judge

---

[2] RoundPoint is not entitled to indemnification for the additional $500.00 it paid to settle the Hayes Litigation. That amount pertained to separate settlement negotiations "to secure an agreement by Ms. Hayes that she would not appeal the foreclosure order." (Tr. 188–89).